**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **SAYED SHERINAQA FAZEL,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:26-CV-00692** |
| | § | |
| **TODD M. LYONS,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Petition for a Writ of Habeas Corpus, (Dkt. No. 1), and Respondents' Motion to Dismiss and, Alternatively, Motion for Summary Judgment, (Dkt. No. 7). The petition alleges that Petitioner's detention in federal immigration custody is unconstitutional. The primary issue before the Court is whether there is a significant likelihood that Petitioner's removal from the United States will occur in the reasonably foreseeable future.

For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus is granted. Respondents are ordered to release Petitioner **by June 10, 2026, at 5:00 p.m.** Respondents are ordered to notify the Court of the status of Petitioner's release **by June 11, 2026, at 5:00 p.m.**

## I. BACKGROUND

Petitioner is a citizen and national of Afghanistan currently detained in federal immigration custody. He most recently entered the United States in January 2025. (Dkt. No. 1 at 6; Dkt. No. 7-2 at 1).[1] After he entered through a port of entry using the CBP One app, he was detained and processed for expedited removal. (Dkt. No. 1 at 6; Dkt. No. 7-2 at 1). He was screened for credible fear and received a positive fear decision. (Dkt. No. 7-2 at 1). Because he had a credible fear, he was served a Notice to Appear, charging

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

1 / 10

him as removeable. (*Id.*). Petitioner remained in detention pending the final hearing in his removal proceedings, which took place on July 3, 2025. (Dkt. No. 1 at 6; Dkt. No. 7-2 at 1). At the hearing, the Immigration Judge (IJ) denied his applications for relief and ordered him removed to Afghanistan. (Dkt. No. 1 at 6; Dkt. No. 7-2 at 2). Petitioner reserved appeal, but no appeals were filed, so his order of removal became final on August 4, 2025. (Dkt. No. 7-2 at 2). On August 18, 2025, Petitioner filed Motion to Reopen his proceedings in Immigration Court, and the motion was denied. (*Id.*). Petitioner remains detained pending execution of his removal order, and he has been detained since his entry in January 2025.

Petitioner has a valid passport to Afghanistan. (*Id.*). However, Afghan nationals cannot be removed to Afghanistan without a transit letter issued by the Afghan government. (*Id.*). Respondents initiated the process to request a transit letter for Petitioner on September 17, 2025. (*Id.*). Between October 2025 and April 2026, Respondents have followed up on obtaining the transit letter six times. (*Id.*). There is no indication that a transit letter has been received. (*See id.*).

On October 9, 2025, Respondents conducted a 90-day Post Order Custody Review (POCR). (*Id.*). Respondents decided to continue Petitioner's detention on the basis that "Petitioner was determined to be flight risk given, he was subject to a final order of removal, and [Enforcement and Removal Operations (ERO)] expected removal to be effected within the reasonably foreseeable future." (*Id.*).

On December 30, 2025, ERO contacted another agency within the Department of Homeland Security (DHS), HQ-RIO Middle East, to inquire about removing Petitioner to Germany. (*Id.*). Petitioner lived in Germany prior to coming to the United States. (Dkt. No. 1 at 7). However, the German consulate has told Petitioner that "they could not facilitate his return to Germany." (*Id.*). There is no further indication that ERO is pursuing Petitioner's removal to Germany (*See* Dkt. No. 7-2).

In mid-February 2026, Petitioner asked Immigration and Customs Enforcement (ICE) officers if he could be removed, and he was told that there "were no removals to Afghanistan." (Dkt. No. 1 at 7). On February 27, 2026, Respondents served Petitioner with another decision to continue detention based on his 180-day POCR. (Dkt. No. 7-2 at 2). On March 12, 2026, ERO provided a copy of Petitioner's passport to HQ-RIO-

Afghanistan. (*Id.*). On March 16, 2026, HQ-RIO-Afghanistan confirmed that Petitioner's transit letter was still pending. (*Id.*).

As of April 23, 2026, "ERO [was] waiting for Afghanistan to approve and issue a Transit Letter for the Petitioner and [would] continue to follow up regarding the status of the Transit Letter. Additionally, ERO [would] continue to evaluate third countries which may be willing accept Petitioner for removal." (*Id.*). No third country has accepted Petitioner for removal. (*See id.* at 2–3). As of the date of this Order, there is no evidence in the record that any country has communicated to Respondents that they will accept Petitioner's removal.

On April 17, 2026, Petitioner filed the instant petition seeking review of the constitutionality of his detention. (Dkt. No. 1). The petition asserts four claims for relief. First, Petitioner claims that his detention is unreasonable under *Zadvydas v. Davis*, 533 U.S. 689 (2001), and that it violates the Immigration and Nationality Act (INA). Second, he claims that ICE violated agency regulations and the Administrative Procedure Act (APA) by continuing to detain Petitioner beyond the 90-day removal period. Third, he claims that Respondents violate the Fifth Amendment by denying him an individualized custody review. Finally, he claims that the *Accardi* doctrine requires that Respondents follow their regulations, and therefore, provide Petitioner with a custody review and release if his removal is not reasonably foreseeable. He asks the Court to grant declaratory relief and order his immediate release.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This does not require detailed factual

3 / 10

allegations but does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "accept as true all well-pleaded facts." *Rosenblatt v. United Way of Greater Hou.*, 607 F.3d 413, 417 (5th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B. Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Once a party has properly moved for summary judgment under Rule 56, the non-movant must demonstrate which "specific facts" show that there is a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

### C. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### III. DISCUSSION

Respondents move to dismiss Petitioner's claims, and alternatively, they move for summary judgment. (Dkt. No. 7). First, they argue that ICE is permitted to pursue Petitioner's removal to a third country. Second, they argue that Petitioner's detention does not violate *Zadvydas*. Finally, they argue that Petitioner's APA and *Accardi* claims lack merit.

The Court will principally address Petitioner's claim that he is detained in violation of *Zadvydas* and the INA.[2] First, the Court will examine its jurisdiction to hear this claim. Second, the Court will analyze Petitioner's detention and likelihood of removability in the reasonably foreseeable future under *Zadvydas*. Ultimately, the Court will deny Respondents' motion, grant the petition, and order Petitioner's release after finding that he is indefinitely detained.

#### A. The Court Has Jurisdiction to Hear *Zadvydas* Claims

The Court does have jurisdiction to hear indefinite-detention claims because "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688; *Vargas Istamo v. Perez*, No. 5:25-cv-186, slip op. at 6 (S.D. Tex. Dec. 19, 2025); *Chang v. Perez*, No. 5:25-cv-294, slip op. at 5 (S.D. Tex. Feb. 11, 2026). For these reasons, the Court finds that it has jurisdiction to consider Petitioner's indefinite detention claim under *Zadvydas*.

#### B. Petitioner's Detention Is Indefinite[3]

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). As the Court explained, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."

---

[2] Because the Court grants Petitioner's requested relief without consideration of his other claims, the Court will decline to address the merits of those claims.

[3] The Court has previously ruled on similar indefinite detention claims and applies the same *Zadvydas* framework here. *See, e.g.*, *Vargas Istamo*, No. 5:25-cv-186, slip op. (Dec. 19, 2025); *Chang*, No. 5:25-cv-294, slip op. (Feb. 11, 2026).

*Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

In *Zadvydas*, the Supreme Court explained that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." 533 U.S. at 682. Inadmissible noncitizens or those with certain criminal convictions may be detained beyond the removal period, 8 U.S.C. § 1231(a)(6), but the Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

The Court established a "6-month presumption" of reasonableness following the issuance of a removal order. *Id.* at 701. After the six-month period of "presumptively reasonable" detention ends, a petitioner seeking release from detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (denying a *Zadvydas* claim where petitioner offers "nothing beyond conclusory statements"). Once a petitioner meets their burden, the burden shifts to the respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner's post-removal-order detention began, for purposes of the *Zadvydas* analysis, on August 4, 2025, when his order of removal became final. (Dkt. No. 7 at 2; Dkt. No. 7-2 at 2). Accordingly, Petitioner has now been detained approximately ten months beyond the date that his order of removal became final. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has ended. Petitioner must next show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### 1. Petitioner Meets His Burden

Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. First, Petitioner was told by ICE officials

in February 2026 that he could not be removed to Afghanistan. Second, Petitioner was told by the German consulate that they would be unable to facilitate his removal. Third, other Afghan removals have not been able to proceed since Petitioner has been ordered removed. (Dkt. No. 1 at 8) (citing *Yunsai v. Bondi*, No. 26-CA-00129, slip op. at 3 (W.D. Tex. Mar. 30, 2026). For example, in *Yunsai*, the respondents noted that "starting in August 2025, 'Afghanistan barred Afghanistan nationalists from traveling on valid or expired passports without an Afghanistan travel issued transportation letter.'" *Yunsai*, No. 26-CA-00129, slip op. at 4 (Mar. 30, 2026). Finally, Petitioner has not been notified that he can or will be removed to any other country.

Respondents argue that Petitioner has failed to meet his burden, alluding that Petitioner's statements are conclusory and insufficient under *Andrade v. Gonzales*. As established in that case, a petitioner must show more than conclusory statements to establish good reason. *Andrade*, 459 F.3d at 543–44. Other district courts provide helpful persuasive authority in considering whether a petitioner meets this burden. For example, in *Trejo v. Warden of ERO El Paso East Montana*, the court found that Trejo met his burden by alleging that he received deferral of removal to El Salvador, his only country of citizenship, and "that ICE has not identified a third country that will accept him." No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). In another case, *Baltodano v. Bondi*, the petitioner met his burden by showing that he had been granted deferral of removal to Nicaragua, that he had no ties to any other country, and that travel documents had not been secured for any third country. No. CV-25-1958, 2025 WL 3484769, at *4 (W.D. Wash. Dec. 4, 2025). Other courts have found that the expiration of the presumptively reasonable six-month period is enough to meet the burden. *Iakubov v. Figueroa*, No. CV-25-3187, 2025 WL 2640218, at *2 (D. Ariz. Sep. 15, 2025); *Pham v. Bondi*, No. 2:25-CV-1835, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

Here, the Court finds that Petitioner presents sufficient evidence to meet the burden. His only country of citizenship is Afghanistan, and he cannot be removed there without a transit letter. The letter was initially requested nearly nine months ago, with no response. Though Respondents have followed up on the request, there has been no progress. Petitioner lived in Germany before coming to the United States, however, Germany will not facilitate his removal there. He has not been notified of a third country

7 / 10

for removal. Each of these facts supports his assertion—and goes beyond conclusory statements—that he has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and he has met his burden to establish good reason.

### 2. Respondents Fail to Meet Their Burden

Because Petitioner has shown good reason, the burden then shifts to Respondents to provide evidence sufficient to rebut the showing. Respondents put forth that "[t]here are no known impediments to executing Petitioner's removal order to Afghanistan once the Transit Letter is received. Removal to Afghanistan is, therefore, significantly likely in the reasonably foreseeable future." (Dkt. No. 7-2 at 3). They also note that ERO has "sought guidance on possible removal to Germany." (Dkt. No. 7 at 10).

To rebut a showing of good reason, Respondents must "respond with evidence sufficient to rebut [a petitioner's] showing." *Zadvydas*, 533 U.S. at 701. District courts in this circuit have held that this burden cannot be met with "pending requests for travel documents, alone." *Trejo*, 2025 WL 2992187, at *5 (collecting cases). In *Trejo*, the petitioner was detained for the execution of a removal order on March 27, 2025, and ERO sent an inquiry to Mexico on April 10, 2025; ERO sent inquiries to two additional countries on May 6, 2025. *Id.* at *2. In ruling on the petition in October 2025, the court there found that those facts weighed in favor of Respondents because the requests were made within weeks of the beginning of Trejo's detention, and the detention just nearly exceeded the six-month presumptively reasonable period. *See id.* at *6. Ultimately, the court still found that Respondents could not meet their burden because the evidence was insufficient to rebut Trejo's showing of good reason. *See id.* The Court finds the reasoning in *Trejo* persuasive.

Here, Petitioner's post-removal-order detention has lasted over ten months. The evidence presented by Respondents fails to rebut Petitioner's good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents state that "there are no known impediments" to removing Petitioner "once the Transit Letter is received"—yet that is an impediment to Petitioner's removal. A request for Petitioner's travel document has been pending since September 2025, and that pending inquiry alone cannot justify Petitioner's continued detention, which may

continue indefinitely into the future while that request remains pending. Respondents' inquiry about Germany fares no better. ERO *seeking guidance* on *possible* removal to Germany is too speculative to establish a significant likelihood of removal in the reasonably foreseeable future, especially in the face of Petitioner's contention that the German consulate cannot facilitate his removal. While Respondents contend that ERO is actively working on Petitioner's removal, the Court finds that these efforts and the evidence presented by Respondents do not rebut Petitioner's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### 3. Respondents Are Not Entitled to Judgment as a Matter of Law

As the movants in a motion for summary judgment, Respondents carry the burden to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Based on the Court's analysis of the reasonableness of Petitioner's detention set forth above, Respondents are not entitled to judgment as a matter of law. Because Respondents have not rebutted the showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the motion for summary judgment is denied.

### 4. Petitioner Is Entitled to Release

The Court finds that Petitioner's continued detention violates due process and the INA because there is no significant likelihood of removal in the reasonably foreseeable future. For that reason, the Court determines that he is entitled to relief on the indefinite detention claims in his petition. Because the Court finds that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner must be released. *Zadvydas*, 533 U.S. 701 (holding that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). The Court orders his release as set forth below.

### IV. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss and, Alternatively, Motion for Summary Judgment, (Dkt. No. 7), is **DENIED**. Petitioner's Petition for a Writ of Habeas Corpus, (Dkt. No. 1), is **GRANTED**.

The Court **ORDERS** Respondents to release Petitioner **by June 10, 2026, at 5:00 p.m.** Respondents must notify his counsel of the exact time and location of release **no less than two hours** before his release.

The Court **ORDERS** that Petitioner cannot be re-detained without a hearing before this Court to determine whether there has been a material change in circumstances; and he may only be subject to detention if there is a material change in circumstances. The 10-day notice provision from the Court's April 20 Order, (Dkt. No. 5), **REMAINS IN EFFECT**.

No later than **June 11, 2026, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning Petitioner's release. The parties should also notify the Court of the conditions, if any, of his release.

A final judgment will follow.

It is so **ORDERED**.

**SIGNED** on June 9, 2026.

_____
John A. Kazen
United States District Judge

10 / 10