United States District Court
Southern District of Texas

**ENTERED**
June 22, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **SAYED SHERINAQA FAZEL,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:26-CV-00692** |
| | § | |
| **TODD M. LYONS, ET AL.,** | § | |
| | § | |
| **Respondents.** | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Petitioner's Motion to Enforce, (Dkt. No. 12). Petitioner challenges the necessity and lawfulness of the electronic monitoring requirement in his Order of Supervision (OSUP), which was issued by the Department of Homeland Security (DHS) U.S. Immigration and Customs Enforcement (ICE) upon his release from immigration detention pursuant to the Court's Order, (Dkt. No. 9). He moves the Court to modify his conditions of release because his ankle monitor and GPS monitoring constitute custody. For the reasons discussed below, the motion will be denied.

Petitioner filed a petition for a writ of habeas corpus challenging his immigration detention on April 17, 2026. (Dkt. No. 1). The Court granted his petition in part and ordered his release on June 9, 2026. (Dkt. No. 9). When he was released, Petitioner was placed on an OSUP, which is an order of supervision detailing a noncitizen's conditions of release. (Dkt. No. 12-1 at 2).[1] Petitioner's OSUP included a requirement for electronic monitoring. (*Id.*). Petitioner objects to Respondents' use of electronic monitoring on the ground that it is a "restrictive condition that constitutes custody." (Dkt. No. 12 at 1). Ultimately, Petitioner "moves for this Court to remove the overly restrictive conditions of release, including his ankle monitor and 24/7 GPS monitoring." (*Id.* at 2).

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

Respondents argue that Petitioner's motion should be denied. First, Respondents assert that his conditions do not constitute custody. Second, Respondents assert that the restrictive conditions imposed here are permissible because they are rationally related to a legitimate government interest.

As a threshold issue, the Court evaluates its jurisdiction to hear Petitioner's challenge to his conditions of release. Respondents do not challenge the Court's jurisdiction to hear this objection, but it is always incumbent on the Court to consider its jurisdiction. *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012). A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. The Court originally had jurisdiction to hear Petitioner's prolonged detention claim and order his release. (*See* Dkt. No. 9 at 5). Even though Petitioner has been released, the Court finds that he remains in immigration custody for Section 2241 purposes because his liberty is restrained. *See Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) (per curiam) (citation modified) ("Although an applicant need not be in actual physical custody to pursue a habeas action, there must be some type of restraint on the liberty of a person."). Because Petitioner remains in custody for the purposes of Section 2241, as he is subject to an order of supervision, the Court retains its jurisdiction to consider his challenge to the lawfulness of his custody.

Turning to the substantive analysis, the Court applies the statute and regulations relevant to Petitioner's immigration detention and conditions of release. 8 U.S.C. § 1231. This statute provides that: "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). This statute further directs that corresponding regulations shall include provisions that require, among other conditions, noncitizens "to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." § 1231(a)(3)(D). These provisions are expansive: "we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001) (citing 8 U.S.C. § 1231(a)(3)).

The corresponding federal regulations set out specific procedures for establishing conditions of supervision. These regulations generally defer to DHS's Headquarters Post-order Detention Unit (HQPDU) to set conditions of release:

> An alien's release pursuant to an HQPDU determination that the alien's removal is not significantly likely in the reasonably foreseeable future shall be upon appropriate conditions specified in this paragraph and in the order of supervision, in order to protect the public safety and to promote the ability of [DHS] to effect the alien's removal as ordered, or removal to a third country, should circumstances change in the future. The order of supervision shall include all of the conditions provided in section 241(a)(3) of the Act, and § 241.5, and shall also include the conditions that the alien obey all laws . . . . The order of supervision *may also include any other conditions that the HQPDU considers necessary to ensure public safety and guarantee the alien's compliance with the order of removal*, including, but not limited to, attendance at any rehabilitative/sponsorship program or submission for medical or psychiatric examination, as ordered.

8 C.F.R. § 241.13(h)(1) (emphasis added).

Here, the Court already determined that Petitioner was entitled to release as his removal was not significantly likely to occur in the reasonably foreseeable future. (Dkt. No. 9 at 9 (citing *Zadvydas*, 533 U.S. at 701)). However, beyond that, the statute authorizes the agency to prescribe "reasonable written conditions," which the agency exercises through the HQPDU when subjecting noncitizens to conditions of release "that the HQPDU considers necessary to ensure public safety and guarantee the alien's compliance with the order of removal." 8 U.S.C. § 1231(a)(3)(D); 8 C.F.R. § 241.13(h)(1). The statute authorizes the agency to prescribe reasonable conditions, and the HQPDU is authorized by regulation to evaluate those conditions to determine what conditions are necessary to ensure public safety and guarantee compliance with removal orders.

Furthermore, persuasive authority supports the finding that electronic monitoring of noncitizens with final orders of removal is reasonably related to a legitimate government interest. Courts have found that the general application of electronic monitoring does not violate due process without evaluating the agency's decision to impose that condition. For example, in *Gozo v. Mayorkas*, the court held that "ICE's use of ISAP, which includes GPS ankle monitoring, is a reasonable restraint." No. 1:23-CV-159, 2024 WL 2027510, at *4 (S.D. Tex. Mar. 4, 2024) (recommending that the district court deny objections to conditions, though the petition was moot before the

district court could adopt the recommendation). While the facts of Gozo's criminal history are distinguishable from the facts in this case, the court analyzed the application of the monitoring condition broadly: "ISAP's requirements that participants wear ankle bracelets does not violate aliens' due process rights because it is rationally related to the government's interest in monitoring aliens under a final removal order and protecting the community." *Id.* This holding aligns with other cases finding the same. *Ahmed v. Tate*, No. 4:19-CV-4889, 2020 WL 3402856, \*4 (S.D. Tex. June 19, 2020) (collecting cases and finding that though Ahmed did not have criminal propensities, imposition of the condition was not unlawful).

Petitioner cites eight district court cases ordering ICE to modify or not impose conditions of release. Each of these cases is distinguishable because the noncitizens in those cases—unlike Petitioner here—were not subject to a final removal order. *See, e.g.*, *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61 (D. Mass. 2025); *Montes Aguillon v. Bondi*, No. EP-26-CV-71, 2026 WL 531899 (W.D. Tex. Feb. 25, 2026); *Rivas v. Baltazar*, No. 1:26-cv-00442, 2026 WL 444732 (D. Colo. Feb. 17, 2025). As the detention authority in these cases is different from the detention authority here, the Court finds that these cases are not persuasive.

Though Petitioner is in custody for purposes of habeas jurisdiction, the Court finds that the conditions of supervision here are rationally related to a legitimate government interest in monitoring aliens with final orders of removal. The Court's prior Order did not impose limitations on the conditions Respondents could set on Petitioner's release, and it finds no reason to do so now. (*See* Dkt. No. 9).

For the foregoing reasons, Petitioner's Motion to Enforce, (Dkt. No. 12), is **DENIED**.

It is so **ORDERED**.

**SIGNED** on June 22, 2026.

John A. Kazen
United States District Judge